The Chicago, Indianapolis and Louisville Railway Company *v.* Ferguson, Administratrix.

[No. 3,428. Filed March 28, 1901. Rehearing denied June 19, 1901.]

Trial.—*Verdict.*—*Interrogatories.*—The general verdict will not be controlled by answers to interrogatories unless they irreconcilably conflict therewith. *p. 116.*

Same.—*Finding.*—*Personal Injury.*—*Proximate Cause.*—In an action against a railroad company for the death of a brakeman, caused by the derailment of the train, findings of the jury that the breaking of the flange on a wheel of the car was the proximate cause of the wreck is not inconsistent with another finding that the proximate cause thereof was the high rate of speed at the point of derailment. *pp. 116-118.*

Same.—*Inconsistent Findings.*—A finding by the jury in an action against a railroad company for injury to a brakeman resulting from the derailment of a train, that the track was not defective where the flange of a car wheel broke is not inconsistent with a finding that the flange was broken because of a rough and uneven track and the high rate of speed of the train, since the wheel may have been damaged by the rough and uneven track and the break completed after it had passed the rougher portion of the track. *p. 118*

Same.—*Inconsistent Findings.*—*Master and Servant.*—In an action against a railroad company for the death of a brakeman caused by the derailment of the train which was being run at a rapid rate of speed, a finding that the train was being run at such high rate of

speed without any orders or directions to the men on the train from any officer or agent of the road does not show that decedent was responsible for the speed of the train, where it was shown that the train was in charge of a conductor and engineer. *p. 119.*

MASTER AND SERVANT.—*Fellow Servant.—Railroads.*—Where in an action against a railroad company for the death of a brakeman it was charged that the combined defective condition of the railroad track, the defective material of a wheel, the failure to inspect and the high rate of speed with heavily loaded cars resulted in breaking the flange of a wheel, the derailment of the train and the death of decedent, the defendant was liable, under §7083 Burns 1894, although it be conceded that the negligent operation of the train was the act of the engineer or conductor as fellow servants. *pp. 119, 120.*

From Lawrence Circuit Court; *W. H. Martin,* Judge.

Action by Minnie Ferguson, administratrix, against the Chicago, Indianapolis and Louisville Railway Company for the death of intestate. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*E. C. Field* and *W. S. Kinnan,* for appellant:
*S. B. Lowe, T. J. Brooks* and *W. F. Brooks,* for appellee.

COMSTOCK, J.—The decedent at the time of his death was and for four months prior thereto had been a brakeman in the employ of appellant company. His death was occasioned by the derailment of a train upon which he was acting as such employe. It is alleged that one of the causes of the derailment was the breaking of the flange on a wheel of one of the cars. The complaint is lengthy, but among other acts of negligence it is alleged that the road-bed was not maintained in proper repair at the place where the flange was broken and at the place where the car was derailed, and that the track was generally maintained in an unsafe condition as to the road-bed and rails; that the car that was first derailed was old, having been rebuilt by the appellant at its own shops in 1898; that said wheel was worn and cracked and defective, the defects of which were obscured and hidden from ordinary observation, but would have been discovered by reasonable inspection; that appellant had neg-

ligently failed to supply inspectors, or to cause inspection to be made; that decedent had no knowledge of such failure to inspect, or of the defects in said wheel; that he was not a judge of wheels and cars and could not inspect the same had he tried; that it was not his duty to inspect, and he did not; that the cars were overloaded for the kind of track the train was being run over and the speed it was running; that the train was running at a high and reckless rate of speed, and that it was not in the power of the decedent to control the dangerous rate of speed; that an inspection would have discovered the defects of the wheel and have avoided the accident.    It is averred that the derailment was caused by the negligence above set out and the running of the train at a high and dangerous rate of speed over a defective track. The cause was put at issue by general denial and the trial resulted in a general verdict and judgment thereon for appellee in the sum of $2,500.    The jury with their general verdict returned answers to interrogatories.

The only error assigned upon this appeal is the action of the court in overruling appellant's motion for judgment on the special findings, notwithstanding the general verdict.

The general verdict finds to be true all the material averments of the complaint necessary to recovery.    It finds that the death of the decedent was occasioned by the negligence of appellant and that the decedent was himself free from fault contributing to his death.    The general verdict will not be controlled by answers to interrogatories unless they irreconcilably conflict therewith.    *Rhodius* v. *Johnson,* 24 Ind. App. 401; *Sponhaur* v. *Malloy,* 21 Ind. App. 287, and authorities cited.

At the request of defendant the court submitted interrogatories to the jury.    The following is a fair summary of the pertinent facts specially found.    The immediate and proximate cause of the derailment of the coal car on which the deceased Ferguson was riding was the breaking of the flange on one of the car wheels of the train.    Such derailment

caused his death. Said flange broke off a mile from the point where the train was derailed, and the car wheel continued to run on the rail until it struck a curve of the track, at which place it was derailed. The wheel had been in use about six years and was "roadworthy." The break of the flange was a clean, fresh break. There was "evidence to show that said wheel which broke on the occasion in question was not made of good material and in the usual way in which car wheels generally were made." There was no evidence that at the point where the car wheel was broken there was any defect in the railroad track which caused it to break. It was broken because the track generally was rough and uneven. The decedent had full knowledge of the rough and uneven condition of the track on the day of the accident and for several days prior thereto. The car, the wheel of which was broken, was not overloaded at the time the wheel broke. When the flange broke, the car was running at the rate of thirty miles an hour; this was a dangerous and reckless rate of speed. The proximate cause of the breaking of the flange was said high rate of speed. At the time of the derailment, the train was running too fast (at the rate of twenty-five miles an hour). This high rate of speed was the cause of the wreck. It had been running at this rate of speed for two miles. The train was run at this high rate of speed without any orders or directions to the men on the train from any officer or agent of the road so to run said train. It was an extra train, not required to be run on any particular schedule. Its speed was regulated wholly by the men on the engine and train. Decedent was stationed on the eighth car from the front end of the train for the purpose of assisting in the operation of the train and of setting the hand brakes in case the air brakes should not properly be worked from the engine, and was in a position where he could readily have applied said hand brakes if it had been necessary for him to do so. He did not set any of the hand brakes after the train started down the hill. The first nine

cars were equipped with air brakes in addition to the hand brakes, which air brakes were equipped to be operated from the engine. The decedent could have slackened the speed of the train by setting the hand brakes on part of said cars as the train proceeded down said hill. It was a part of his duties to watch the movement of the train and "assist in holding said train down hill when it became necessary." Decedent had been in the employ of the appellant four months.

Counsel for appellant refer to the findings that the breaking of the flange was the proximate cause of the derailment which resulted in the death of the decedent; that the wheel at said time was "roadworthy", and that the break of the flange was a clean, fresh break. It will be observed that it is also found that the proximate cause of the wreck was the high rate of speed at the point of the derailment. These findings as to the proximate cause are not necessarily inconsistent. The jury might reasonably conclude that without the broken flange there would have been no derailment, and that with the broken flange at a slow rate of speed the train would not have left the track. But if they are inconsistent they neutralize one another and leave the general verdict standing as to the causes alleged in the complaint. That the break in the flange was "fresh and clean" is not inconsistent with the averments of the complaint that the wheel was brittle, nor with the finding that there was evidence that the wheel was not made of good material and in the usual way in which car wheels were made.

Counsel refer also to the finding that the railroad track was not defective where the flange broke, and that the wheel continued to run on the rail for about a mile, where it struck a curve in the track and was derailed and the decedent killed; and draw therefrom the inference that the defective track had nothing to do with the derailment. But the jury also found that the "flange was broken because the track was rough and uneven and that the high rate of speed was the

proximate cause of the breaking of the flange." The complaint avers that the track was not maintained in proper repair in various respects. The conditions described made it rough and uneven. The damage to the wheel may have been caused by the rough and uneven road and the break of the flange of the wheel completed after it had passed the rougher portion of the track.

Counsel for appellant insist that the findings show that appellant had nothing to do with the speed of the train; that the speed was "within the keeping" of the decedent and his fellow servants. We have set out the findings upon which this claim is based. The air brakes were operated from the engine; it was his duty to set the hand brakes in case the air brakes should not be properly worked from the engine. It does not appear that there was anything to prevent the air brakes from being worked from the engine. It does not appear to what extent he could have slackened the speed. There is no finding that any efforts of his could have controlled the speed. There were on the train an engineer, a conductor and other brakemen. It will not be presumed that the brakeman was not subject to the orders of the conductor or the engineer. Nothing is found as to the giving of signals by which the conduct of a brakeman is ordinarily regulated. The evidence is not before us. It is alleged that the wheel had not been inspected when an inspection would have disclosed its defects. There is no finding that it was inspected.

It is not difficult to conceive of various facts provable under the issues which would reconcile what the learned counsel for appellant claim to be the irreconcilable conflicting special findings with the general verdict. It is charged that the combined defective condition of the railroad track, the defective material of the wheel, the failure to inspect and the high rate of speed with heavily loaded cars resulted in the derailment of the train and the death of decedent. If it be conceded that the negligent operation of the train was the

act of the engineer or conductor as fellow servants of the decedent, appellant would still be liable under the 4th division of §7083 Burns 1894.

The seeming conflicts between the general verdict and the special findings are not irreconcilable.

Judgment affirmed.